AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>TRAYVON JAMAL PERDUE<br><br>*Defendant(s)* | Case No. 3:21MJ196 |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __7/1/2020__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) and 924(a)(2) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Complainant's signature*

Dustin Phillips, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence via facetime.

Date: 5/21/21

City and state: Dayton, OH

Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Dustin J. Phillips, a Task Force Officer for the Federal Bureau of Investigation ("FBI") and City of Dayton Police Department officer (hereinafter referred to as the "affiant") being duly sworn, deposes as follows:

## INTRODUCTION

1. Affiant is a Task Force Officer with the United States Federal Bureau of Investigation within the meaning of Title 21, United Stated Code ("U.S.C."), Section 878. That is, an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses enumerated in 21 and 18 U.S.C. § 878.

2. Your Affiant has been employed in law enforcement for the past twelve years. I currently serve as an officer with the Dayton Police Department. In approximately June 2015, I became a Task Force Officer with the FBI Safe Streets Task Force. Since 2013, I have been dedicated to the investigation of narcotics, firearms and gang offenses. I have been involved in firearm-related arrests, executed search warrants that resulted in the seizure of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases.

3. This affidavit is made in support of a criminal complaint against, and an arrest warrant for, Trayvon Jamal Perdue ("PERDUE") for a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). This affidavit does not contain all information known to me regarding this alleged offense, but only those facts necessary to establish probable cause.

## FACTS

1. On or about July 1, 2020, Dayton Police Detective Lucas A. Rose authored a search warrant for 1905 Wyoming Street which is in the City of Dayton. This search warrant was reviewed and signed by Dayton Municipal Court Judge Carl S. Henderson at 1051 hours. Once the search warrant was signed, Detective Rose gathered a search team to execute the warrant and held a briefing prior to going to the house. As Detective Rose was holding this briefing, he assigned Sergeant Ryan T. Halburnt and Detective Jeremy A. Stewart to conduct surveillance on the house until the search team could arrive.

2. While on surveillance, Sergeant Halburnt saw a black Nissan Altima, with Ohio license plate GPL8012, arrive at the house and backed into the detached garage which is on the property, but is accessed from the alley. Once inside, the garage door closed and Sergeant Halburnt saw a black male, later identified as PERDUE, exit the side door and then entered 1905 Wyoming Street through the rear door. PERDUE was seen exiting and re-entering the house several times while Detective Rose and the search team finished their briefing. Just prior to the search team arriving, Sergeant Halburnt saw PERDUE exit the rear door, used a key to lock the rear door, and walked toward the garage. PERDUE reached the side door of the garage and used a key to unlock it, then stepped inside. Fearing PERDUE was

intending on leaving, Sergeant Halburnt approached the garage on foot and requested Detective Stewart pull his cruiser up to the garage door.

3. As the garage door opened, Detecive Stewart placed his cruiser directly in front of the Nissan to prevent it from fleeing. PERDUE was the only person in the vehicle and Sergeant Halburnt immediately began giving him verbal commands to show his hands. PERDUE initially complied with this and raised his hands, but immediately dropped them back down into his lap area. PERDUE then leaned his body toward the passenger side of the car but kept his head and upper part of his torso visible. Both Sergeant Halburnt and Detective Stewart were now giving PERDUE commands to show his hands but he refused. Detective Stewart had a clear view of PERDUE throught he front windshield and saw as he then leaned his right shoulder toward the rear floorboard which is activity consistent with a person attempting to conceal or retrieve something inside a vehicle.

4. After approximately 20 seconds, PERDUE finally stopped moving around inside the car and stepped out. He was immediately detained due to his actions and movements as he was leaving the target location where a warrant was to be served. PERDUE was found to be in possession of $1,288 in U.S. currency, a cellular phone, and a small baggie containing marijuana. Once detained, Detective Stewart opened the passenger side door and looked in the exact area where PERDUE was just seen moving around inside the car. On the rear floorboard, under the passenger seat, Stewart saw a black and silver SCCY 9mm handgun, with serial number 076463. The gun did not have a magazine seated in it, but did have a round in the chamber. The magazine fitting this gun was located just inside the trunk as if it had been placed there through the open trunk access in the rear seat of the car. The folding armrest that doubles as the door to this access opening was folded down leaving the hole wide open. This magazine was found to fit the firearm from the floor board and contained 10 additional live rounds of the same ammunition located in the chamber of the gun. This gun and the accompanying magazine were both located in the exact locations Detective Stewart and Sergeant Halburnt saw him moving prior to exiting the car. An eventual complete search of the car revealed a box containing a money counter in the truck. Also inside this box was a small baggie of methamphetamine, which was submitted to the Miami Valley Regional Crime Laboratory who reported it contained .15 grams of Methamphetamine, a Schedule II controlled substance.

5. Shortly after PERDUE was detained, the search team arrived and executed the search warrant on the house. Once the house was secure, Detective Rose spoke with PERDUE briefly. PERDUE was advised of his Miranda Warnings and he agreed to speak with Rose at that time. PERDUE answered some questions asked of him, however when asked about the firearm, he advised he did not wish to answer. PERDUE also refused to answer questions about the source of his income. PERDUE initially advised the money counter from the trunk belonged to him, however quickly changed his story and said he knew nothing about the money counter.

6. During the booking process, PERDUE spontaneously asked Detecive Erick Hamby, "If I didn't have that gun I wouldn't be going to jail?"

7. I have reviewed conviction documents from the Montgomery County, Ohio, Clerk of Courts indicating that PERDUE has been previously convicted of the following felony offenses, each of which was punishable by a term of imprisonment exceeding one year, namely:

    a. On or about November 4, 2010, in the Montgomery County, Ohio Court of Common Pleas, case number 2009 CR 01113/03, of: Possession of Heroin (less than 50 g.) in violation of O.R.C. 2925.11(A), a felony of the second degree; two counts of Trafficking in Heroin (50-100 unit doses)(vicinity of a school/juvenile), in violation of O.R.C. 2925.03(A)(1), a felony of the second degree; Possession of Heroin (50-100 unit doses) in violation of O.R.C. 2925.11(A), a felony of the third degree; and Engaging in a Pattern of Corrupt Activity, in violation of O.R.C. 2923.32(A)(1), a felony of the first degree. On or about November 22, 2010, PERDUE was sentenced to a total term of incarceration of four years.

8. Special Agent Christopher Reed of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who specializes in identifying firearms and their origin/place of manufacture, has advised that SCCY firearms are not manufactured in Ohio; as such, the SCCY firearm recovered in this case moved in interstate commerce.

9. Based on the above-mentioned facts, I assert that there is probable cause to believe that PERDUE violated 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

Further your Affiant sayeth naught.

_____
Dustin J. Phillips, Task Force Officer
Federal Bureau of Investigation,

Subscribed and sworn to before me this 21st day of May, 2021.

_____
Sharon L. Ovington
United States Magistrate Judge